Anna C. Fitzsimons, complainant-appellant,

*v.*

Irwin Realty Company and Morris J. Saslaff, defendants-respondents.

[Decided September 27th, 1934.]

On appeal from an order of the court of chancery advised by Vice-Chancellor Sooy, who filed the following opinion:

"This is on motion to dismiss the bill of complaint on the ground that it does not set up any equity.

"The bill alleges that the complainant was the owner of a mortgage on real estate in Atlantic City, New Jersey, to secure the sum of $25,000; that on January 27th, 1933, complainant assigned the mortgage to the Irwin Realty Company to secure a note in the sum of $7,500; that contemporaneously with the assignment aforesaid, complainant entered into a separate agreement with defendant and assigned certain shares of building and loan stock as security for the performance of that agreement.

"The assignment of the mortgage provides that it: 'is given as collateral security for the payment of the sum of $7,500 and the semi-annual interest thereon as evidenced by a note bearing even date herewith for the sum of $7,500 made by Anna C. Fitzsimmons, payable within two years, from the date thereof, and for the payment of all moneys hereafter expended by the Irwin Realty Company in payment of taxes and/or insurance premiums for the premises covered by the mortgage in question, it being understood by the parties hereto that the whole principal sum of the note and the interest thereon shall upon default in the payment of the semi-annual interest become immediately due and payable.'

"The assignment of the building and loan stock provides that it is made: 'as collateral security for the payment within two years from the date thereof of the 1930, 1931 and 1932 taxes, * * * provided, however, that the 1930 taxes shall be paid within six months from the date hereof and the 1931 tax shall be paid within one year from the date hereof.'

"Complainant says that on July 27th, 1933, six months' interest fell due and payable on the note in question and that the realty company refused a tender of the payment thereof and agreed that the payment should be postponed until September 15th, 1933, at which time there as to be a settlement under the building and loan assignment agreement.

"On September 15th, 1933, complainant alleges that she tendered the interest to the realty company, which was refused, and that she now tenders and holds herself ready and willing to pay the full amount of the interest due under the mortgage assignment agreement.

"Complainant admits her default under the terms of the building and loan assignment agreement and says that the defendant, on September 21st, 1933, served a notice of his intention to sell the collateral under both agreements, and that on October 2d, 1933, it did sell all the collateral under both agreements, the mortgage for $4,200 and the building and loan stock for $1,200.

"Complainant charges that the alleged sale of the mortgage was in violation of the contract between complainant and defendant, in that 'at the time of the notice of sale and the sale no default existed under said agreement.'

"Complainant further charges that the defendant has failed to apply the $1,200 received for the building and loan stock to the payment of the taxes, as provided in the contract between complainant and defendant.

"Complainant prays, in addition to the formal prayers:

" '3. That the alleged sale or sales of the interest of your complainant in the bond and mortgage referred to in paragraphs 1 and 2 of bill of complaint may be set aside and for nothing holden.

" '4. That defendant Irwin Realty Company be decreed to apply the sum of $1,200 received from the sale of complainant's building and loan stock to the payment of taxes now in arrears.'

"On this motion to strike, defendant must concede the material allegations of the bill of complaint, so that there is an admission that the defendant has prematurely sold complainant's mortgage, i. e., sold it when there was no default, and that it has failed to apply the $1,200 received from the building and loan stock to the payment of taxes.

"It will be observed that the bill is not based on any allegation of fraud but, as is distinctly averred therein, 'that the alleged sale of your complainant's mortgage was in violation of the contract marked *Exhibit A,* in that at the time

of the notice of sale and the sale no default existed under said agreement.'

"As to the breach of the building and loan stock assignment contract, the only breach alleged is not with reference to the sale thereof after an admitted default, but the breach is a failure to apply the proceeds of the sale of the building and loan stock in the manner provided for by the assignment contract.

"Complainant has a complete and adequate remedy to recover any and all damages she may have sustained by reason of the breach of either the mortgage assignment contract or the building and loan assignment contract, and there being no special equity set up in the complainant, she must resort to the courts of law.

"It is argued that the mortgage has some extrinsic value and comes within that classification where specific performance will be decreed by an award of the particular chattel, citing *Pom. (2d ed.) 3323 § 1402,* and *Pom. (2 ed.) 4877 § 2170* . There is no merit in this contention.

"Complainant says that the bill is not drawn under the theory of the redemption of the pledge. If it were so drawn it would be stricken because of the failure to disclose some special equity, as that of accounting or discovery. *Charles R. De Bevoise Co.* v. *The H. & W. Co., 67 N. J. Eq. 472.*

"The bill will be stricken."

*Mr. William Charlton,* for the appellant.

*Mr. Louis M. Mallin,* for the respondent.

PER CURIAM.

The order appealed from will be affirmed, for the reasons set forth in the opinion filed in the court of chancery by Vice-Chancellor Sooy.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 14.

*For reversal*—None.